359 P.2d 350

STATE of New Mexico ex rel. STATE
HIGHWAY COMMISSION of New Mexi-
co, Petitioner-Appellant and Cross-Appel-
lee,

v.

A. J. TANNY and Rose Tanny, Defendants-
Appellees and Cross-Appellants.

No. 6771.

Supreme Court of New Mexico.

Feb. 8, 1961.

Fred M. Standley, Hadley Kelsey, Joseph L. Droege, John C. Worden, Sp. Asst. Attys. Gen., for appellant.

R. F. Deacon Arledge, Charles Driscoll, Albuquerque, for appellees.

CHAVEZ, Justice.

This is an appeal from a judgment in a condemnation proceeding wherein appellees, A. J. Tanny and Rose Tanny, his wife, were awarded judgment in the sum of $75,000.

Appellant filed a petition in condemnation against many defendants, including appellees, Tanny, on September 15, 1958. Answer was filed by appellees on September 24, 1958, and an order authorizing immediate entry and acquisition and control of access was entered by the district court on October 1, 1958. On October 27, 1958, the district court appointed commissioners to appraise the value of the condemned property and their report was received on November 19, 1959. Objections to the report of the commissioners were interposed by both appellees and appellant. The cause proceeded to trial on January 21, 1960, without a jury, and on February 12, 1960, the district court entered a judgment for appellees in the exact amount of the commissioners' report. From this judgment, the State of New Mexico, ex rel. State Highway Commission of New Mexico, appellant herein, appealed.

Appellees' condemned land was located immediately west of the mouth of Tijeras Canyon, on East Central Avenue in the city of Albuquerque, New Mexico. The land was situated on the north side of the street and diagonally across from Western Skies Hotel. Appellees' witnesses consisted of the three commissioners appointed by the district court, as well as one of appellees', Dr. Alfred J. Tanny. Appellant also presented witnesses who testified as to the fair market value of the condemned land. In the course of the trial, testimony was introduced relating to two sales of land made by the State Land Commissioner: The lands involved in the state land sales were located on East Central Avenue and Eubank Avenue, a distance of some two miles west of appellees' land. There was also testimony relating to certain land condemned by appellant and belonging to Western Skies Hotel. The appraised damages on the condemned land of Western Skies Hotel was $150,000, which was paid by the state.

Appellant relies on three points upon which it seeks a reversal or a remittitur order: (I) that the state land office sale is inadmissible to establish fair market value; (II) that evidence of a sale at condemnation is of no value in showing fair market value; and (III) that the evidence is insufficient to sustain the judgment.

Appellant, under point I, contends that the state land sale is inadmissible to estab-

lish fair market value and cites authorities to the effect that the value in condemnation cases must be based upon sale in the open market. In New Mexico certain state lands shall be sold for cash or upon payment of one-twentieth of the purchase price in cash and the balance at any time within thirty years, with deferred payments bearing interest at the rate of four per cent. Section 7–8–9, N.M.S.A. 1953 Comp. In 1941 the legislature enacted a statute which authorized the land commissioner, after investigation and in case it appears that the interest of both the state of New Mexico and the holder of the contract will best be served, to extend such contract, provided such extension be for such period of time as the circumstances justify, but in no case to exceed a period of time greater than that originally set forth in such purchase contract. Section 7–8–13, N.M.S.A. 1953 Comp.

Under this point appellant first contends that the rule in condemnation suits is that market value of the property before and after must be established and a judgment of that market value awarded to the condemnee. He cites several of our cases, including Board of Com'rs of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682, 685. In Board of Com'rs of Dona Ana County v. Gardner, this court recognized the so-called " 'before and after' rule" saying:

" * * * and (5) that both special and general benefits may be set off against damages to the remainder and the value of the part taken.

"We believe the fifth rule is correct and in accordance therewith we hold that benefits, both general and special, should be set off against damages to the remainder and against the part taken."

In the case before us this rule does not apply as the entire tract of appellees was taken and there could be no general or special benefits to the remainder as there was no remainder.

Appellant also contends that the commissioners' valuation of the land taken was based strictly upon the testimony concerning two sales made by the State Land Office. Appellant states in his brief as follows:

"It must be noted that the trial court entered a finding of fact (tr. clerk's record 76) as follows:

" 'Finding of Fact 3:

" 'That only pertinent testimony as the true value of the condemned property as of the date of taking, October 1, 1958, has been considered by the court.'

"We submit to this Court that a full reading of this transcript would indicate that the Court is incapable, by reason of the condition of this record,

to make such a finding and exclude the testimony concerning the state land sale. This testimony is so pertinent and important to the substantiation and evaluation of this case that without that testimony the amount of judgment entered cannot be sustained. * * *"

Before going into the merits of this contention, we remind appellant of Rule 15 (6), Rules of the New Mexico Supreme Court.

In Chavez v. Potter, 58 N.M. 662, 274 P.2d 308, 309, this court, speaking through Justice Lujan, said:

"The plaintiff contends that the court erred in making the above findings of fact and in refusing certain requests made by him. He copied these findings verbatim in his brief but failed to set out any of the evidence adduced at the trial from which we can determine whether the objections to these findings and those requested are well taken as required by section 6 of Supreme Court Rule 15. Under the circumstances we will not search the record for this information. * * *"

Because the state is involved in this suit, we have undergone the laborious task of reading the entire transcript, as suggested by appellant, notwithstanding our Rule 15 (6), and we say with absolute candor that there is no merit in appellant's position on this point. It is true that evidence was presented in connection with several state land sales, one of which was made prior to the taking in this case, to-wit, the summer of 1958. Notwithstanding appellant's objection, appellant, on cross-examination of Mr. Rowan, voluntarily opened up this point when he inquired of Mr. Rowan as to the various sales of property made in the northeast heights section of the city of Albuquerque, and which sales were considered by him in making his appraisal as to the value of the condemned property. This testimony is as follows:

"Q. All right, what next? A. We considered the southeast corner of Eubank and Central which was a straight land sale from the state to Bellamah in, I believe, May of 1958, May or June of 1958, this was previously discussed.

"Q. In May of 1958? A. '58.

"Q. And have you broken that down as to foot frontages? A. 345 per front foot, $1.18 per square foot.

"Q. And that again was one of these state sales, as we have indicated, correct? A. Yes, five per cent down, four per cent interest in advance for the first year.

"Q. Did you feel that that represented its present cash market value? A. It might very well be less than its present cash market value since many

of those state land sale transactions have been resold at increased prices.

"Q. Did it reflect at the time of the sale a— A. (Interrupting) Market value.

"Q. A cash market value. A. That is very very hard to determine, I would not express an opinion as to whether a cash market value or not, the term cash market value is very hard to relate to the Albuquerque market since it is rare indeed that a seller wishes to sell for cash, quite often they will add a premium to their asking price if you wish to pay them cash, believe that or not, I have sold property and have listed property where the seller demanded the full amount of the taxes they would be required to pay if they had to take cash for it."

One of appellees' witnesses, Mr. Esenwein, testified that applying the same valuation yardstick of a state land sale to Mr. Bellamah, the purchaser, to the appellees' land, that we would arrive at a valuation of $85,000 for said land. It appears that another of the Bellamah tracts sold by the state was an inside tract and the valuation arrived at in that purchase was at the rate of $1.68 per square foot.

Appellant's objection to the court's consideration of the state land sale is futile in view of the fact that appellant developed the circumstances as to the state land sale to Mr. Bellamah, which was figured at the rate of $1.18 per square foot. However, appellees' witnesses, admitted to be expert appraisers and well acquainted with the value of property in the northeast heights section, and particularly the witness Rowan, testified as to various sales which he personally knew of besides the state land sale and he, as well as the witnesses, Boldt and Esenwein, testified extensively as to the basis of their valuation of appellees' property. These witnesses had spent many months in consideration of their appraisal; had checked records of sales and took into consideration other factors bearing upon value. Appellant also presented witnesses who testified as to the fair market value of appellees' land. In the light of the trial court's finding of fact No. 3, heretofore set out, we cannot say that the trial court committed error on this point and there is substantial evidence in the record to support the findings of the trial court. This court has repeatedly held that a finding will not ordinarily be set aside if it is supported by substantial evidence, regardless of whether or not the appellate court agrees with the trial court. Templeton v. Pecos Valley Artesian Conserv. Dist., 65 N.M. 59, 332 P.2d 465. Compare United States v. 396 Corp., 2 Cir., 264 F.2d 704.

We now consider appellant's point II, that evidence of a sale at condemnation is of no value in showing fair market value.

This has reference to testimony in the record as to the price paid in condemnation of property of Western Skies Hotel, which is located diagonally across from the property involved in this suit. The record discloses that in settlement of the condemnation proceeding by the state against land owned by Western Skies Hotel, that Western Skies Hotel was paid for the lands condemned the sum of $150,000, or at the rate of $2.72 per square foot. Appellant contends that this was one of the principal factors relied upon by appellees' witnesses, Archie I. Rowan, Irvin Esenwein and Ira V. Boldt, in arriving at the fair market value which they placed upon appellees' land. Appellant cites several cases which support the proposition that evidence as to price paid in condemnation for similar land is not admissible. These authorities may be correct; however, the record in this case shows that the witness, Rowan, was asked:

"Q. Can you explain to the Court why land here in the Tanny tract should be valued at $1.50 a square foot and land out in the Western Skies should be valued at $2.72 a square foot? A. I did not value the land at $2.72. I calculated that was the amount of the settlement. I did not value it at $2.72.

"Q. Did that influence you in any way in connection with the Tanny tract? A. It did not, sir."

Also, it was stipulated by counsel for appellant that Mr. Rowan had been engaged in this type of work (appraising property) and is considered an expert. As hereinbefore set out, Mr. Rowan testified as to specific sales made in the northeast section of the city of Albuquerque and, on cross-examination by appellant, enumerated in detail other sales made prior to the date of the taking and other factors which he took into consideration in arriving at the fair market value of the property involved in this suit at the rate of $1.50 per square foot, or a total value of $75,000 for the entire tract. The tract has a 150 foot frontage on Central Avenue and a depth of 346 feet on Monte Alto Street. The acreage involved is 1.153 acres and the square footage in the tract is approximately 50,200 square feet. Appellant stipulated as to the above, except that appellant claims that the frontage on Central Avenue is from 145 to 146 feet and that there is just a slight variation.

Even though appellees argue strenuously on this point in their brief, appellant, by its witnesses, developed how they arrived at the appraisal of the lands condemned from Western Skies Hotel and wherein the state paid Western Skies Hotel $150,000 for the acquisition of that property. However, according to appellant's witness, the amount paid Western Skies Hotel included severance damages and the loss in market value to the Hotel was figured at the rate of $2.75 per square foot.

■ Appellant, on appeal, cannot object to the evidence relating to the Western

Skies Hotel land condemnation, when appellant itself developed how the Western Skies Hotel appraisal was made and how the amount paid was arrived at. We hold against appellant on point II.

■ Appellant's point III challenges the sufficiency of the evidence in support of the judgment and in its brief states:

"We suggest that a fair reading of this transcript indicates, and convincingly proves to the reader, that an award of the amount involved is an unfair treatment insofar as the public is concerned and such an amount constitutes a gouging of the public."

We disagree with appellant's contentions. In Board of Com'rs of Dona Ana County v. Gardner, supra, we said:

"The court as a ministry of justice must see that the individual is afforded his constitutional rights in obtaining just compensation, but it must at the same time protect the public against exorbitant prices. * * *"

We again refer appellant to New Mexico Supreme Court Rule 15(6) which provides in part as follows:

"A contention that a verdict, judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the transcript. * * *"

We have, nevertheless, reviewed the record and find that the evidence was conflicting as to the fair market value of the property taken. One of appellant's witnesses testified that the fair market value of appellees' property was $53,408 and two other of appellant's witnesses testified the fair market value of the property to be $46,593 and $42,730. Appellees' witnesses testified that the fair market value of the property was $75,000.

■ We recently held in Lindley v. Lindley, 1960, 67 N.M. 439, 356 P.2d 455, that under the substantial evidence rule this court, on review, will consider the features of the transcript most favorable to the party prevailing below.

We find that there is substantial evidence in the record to support the judgment and in view of the trial court's finding of fact No. 3, this finding will not be set aside. Templeton v. Pecos Valley Artesian Conserv. Dist., supra.

Finding no error, the judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

MOISE and NOBLE, JJ., not participating.